Joseph A. Mogavero, J.
CASE HISTORY
Following the original trial the court reserved decision and the attorneys were afforded an opportunity to file written memorandums of law. The court rendered its decision in writing on March 29, 1973 finding that the respondent was the father of the child born of the petitioner November 15, 1972. An order of filiation and support was made on April 12, 1973. An appeal was taken to the Appellate Division, Third Department, from said order and determination. By a decision dated December 12, 1974 of the Appellate Division the order of this court was reversed, on the law and the facts, and the matter remanded for further proceedings not inconsistent with said decision. Three Justices concurred in said decision and two dissented in a memorandum.
The majority opinion refers to the fact that the petitioner claims that she engaged in acts of sexual intercourse with the respondent and specified the date thereof as March 4, 1972. The child was born to the petitioner on November 17, 1972 and the majority decision states that this indicates a gestation period of only 259 days and points to the applicable hospital records as being devoid of any reference to a premature birth. Further, the court in its majority opinion stated that acceptance of the earliest possible date of sexual intercourse developed from the range of testimony would still fail to significantly lengthen the period of gestation and that the respondent had a least raised the possibility of access by another. Further, the majority decision stated that the petitioner failed to adduce any medical proof explaining the apparent shortness of her gestation period from the generally accepted norm. They concluded that the petitioner failed to meet her burden of proof establishing the respondent to be the father of her child by clear, convincing and entirely satisfactory evidence.
The two dissenting Justices stated that under the facts and circumstances of this case it was unnecessary for the petitioner to adduce expert medical testimony to prove the prematurity of her child.
A copy of the Appellate Division order in accordance with the decision was filed in this court on February 7, 1975.
*633 The parties were before the court on February 26, 1975 and the matter was rescheduled for 2:00 p.m., March 26, 1975 for the taking of medical testimony. On March 26, 1975 the petitioner produced her medical expert and testimony was taken. The respondent through his attorney requested permission to produce a medical expert to testify on his behalf and the court granted said request and directed respondent’s attorney to notify the court when the expert would be available. By written communication of April 9, 1975 respondent’s attorney informed the court that he did not intend to put in medical testimony and stated that the record may be considered closed.
In Otsego County there is no Family Court Judge per se and as a result the law requires the County Judge to discharge the duties of the Family Court. Judge. There is only one County Court Judge in Otsego County who does all of the criminal and civil work, without a law clerk, as well as discharges all of the other duties imposed by law on the County Judge. Because of the afore-mentioned, the court has been unable to render a decision until now and then only after not scheduling any more Family Court work except in extreme emergencies which continued to occur.
THE MEDICAL TESTIMONY OF DR. DOUGLAS BARNS
Dr. Barns was graduated from St. Lawrence University and from Cornell Medical College. His internship and residency was at the Mary Imogene Bassett Hospital in Cooperstown and he was certified in obstetrics and gynecology three years after completing his residency in 1958. He has been associated with Mary Imogene Bassett Hospital since 1954 and at the present time he is the chief of the obstetrics and gynecology department at said hospital. About 400 babies are delivered each year at the hospital and Dr. Barns sees about 80% of them.
In determining the expected date of delivery of a baby by the mother, nine or seven days are added to the first day of the last menstrual period and then three months are subtracted. A majority of menstrual cycles is a period of 28 days and a woman will ovulate approximately 14 days before her menstrual period which would mean 14 days after the last menstrual period and this is the time when she would be most likely to conceive. A full-term baby is delivered — on the average — in 40 weeks or 280 days counted from the ñrst date the *634 last menstrual period started. Dr. Barns stated that he would consider an infant at term as a fully matured infant that delivered somewhere between the 38th week and the 41st week of pregnancy.
The petitioner’s expected date of delivery was November 25, 1972 based upon her medical history of having a 28-day cycle with a five-day menstrual period and based upon a commencement of her last menstrual period prior to pregnancy on February 18, 1972. The child was delivered on November 17, 1972 after the petitioner was induced because of hypertension. He stated categorically that this child born to the petitioner would be considered a full-term baby.
The court finds the above testimony to be in accordance with accepted medical authority and makes findings in accordance therewith as stated above.
MEDICAL AND LEGAL TERMINOLOGY
The words "period of gestation”, "pregnancy”, "prematurity”, and "post-maturity” need clarification for a proper discussion; likewise, the "280-day period”.
Schatkin, Disputed Paternity Proceedings (3d ed) in chapter XV under the discussion of the duration of pregnancy (pp 519-520) states as follows: "The duration of pregnancy, or period of gestation, is the interval in days between the time of impregnation and the beginning of labor. The normal period of gestation, according to the consensus of medical testimony, is approximately 9 calendar months — 10 lunar months — or 280 days, calculated from cessation of the last menstruation. In the United States, the courts will judicially notice that a period of 9 calendar months is the usual period of gestation.”
In the fourth edition of Schatkin, Disputed Paternity Proceedings, the discussion of the topic of duration of pregnancy is contained in chapter XXII (pp 567-585). Most of the discussion contained in those pages by that authority consists of quotations from the dissenting opinion of Mr. Justice Wood-side in Commonwealth of Pennsylvania v Watts (179 Pa Super Ct 398). Apparently, Mr. Schatldn is of the opinion that the authorities cited in said dissent in the discussion of Justice Woodside are noteworthy. On page 568 at the bottom thereof and at the top of page 569 there is stated the following:
"Before considering any of the authorities on the duration of pregnancy we should note that time is computed from the *635 date of three different occurrences in the life of the mother; one is the first day of the last menstrual period, one is the time of intercourse, and one is the time of fertilization of the ovum. As the three occurrences usually take place on different dates, care should be taken not to confuse the number of days figured from the different occurrences. Both medical authorities and courts have been careless in their comparisons.
"Computing from the last menstrual period is an inaccurate test of the actual time of conception, but it is the most practical way to predict the date of birth in most cases, and is the time recorded in most records and studies of the duration of pregnancies.” (Emphasis added.)
On page 570 in the first paragraph there is stated the following: "The average duration of human pregnancy, counting from the first day of the last menstrual period is about 280 days or 10 lunar months.”
On page 574 in the middle of the page there is stated the following: "It is to be noted, however, that the 280 days is the time generally accepted as the time from the first day of the last menstrual period rather than from the date of fruitful coition.”
On page 585 the author on his own comes to a conclusion as follows: "In computing the period of gestation, and in predicting the expected date of confinement, where there is extended cohabitation (such as a married woman) or a long sexual association (which may be present in a paternity case) the date of the last menses may be useful and necessary in predicting the expected date of confinement. However, where the petitioner alleges a single act of sexual intercourse, she rests her case on that sole occurrence and we may disregard the date of her last menses, for she herself has designated the date of impregnation, and from that date we predict the expected date of confinement.”
For a good discussion of the entire matter see Pregnancy, Birth and Family Planning by Alan F. Guttmacher, M. D., Professor Emeritus of the Department of Obstetrics and Gynecology at New York’s Mount Sinai Medical School.
According to Dorland’s Illustrated Medical Dictionary (24th ed), pregnancy is defined as the condition of having a developing embryo or fetus in the body, after union of an ovum and spermatozoon; a woman’s duration of pregnancy is about 266 days. Gestation is defined, according to said authority, as the *636 period of development of the young in viviparous animals from the time of fertilization of the ovum.
Dr. Barn’s testimony was in accordance with the above authorities. Two hundred eighty days is the expected date of delivery of a woman based upon the commencement of her last menstrual period prior to becoming pregnant. This 280 days is not counted from the day of actual conception which in most cases is impossible to pinpoint. A period of seven days is added to this date given to the doctor by the woman who is pregnant. Three months is subtracted from this date to arrive at the expected date of delivery or the 280 days. Assuming a 28-day menstrual cycle, pregnancy probably occurred approximately 14 days after the woman’s menstrual cycle commenced or approximately 14 days prior to the time when her next menstrual cycle should have started. Few pregnancies occur during the time when a woman has her menstrual period. A term baby would be one that was delivered either two weeks before or two weeks after the 280 days; one born after that period would be considered post-term; and one prior thereto as pre-term.
ADDITIONAL FINDINGS OF FACT
This court finds that the petitioner and respondent engaged in acts of sexual intercourse with each other on or about March 4, 1972 and the petitioner did not have sexual intercourse with any other person to cause her pregnancy. The court finds that petitioner’s last menstrual period prior to her pregnancy began on February 18, 1972 and that she was delivered on November 17, 1972 rather than on November 25, 1972 because she was induced. The court makes a specific finding that the testimony of the petitioner was truthful in all respects. The court finds that the petitioner should have delivered her child about 266 days after March 4, 1972 which would have been about November 25, 1972, but her delivery on November 17, 1972 was explained to the complete satisfaction of this court. The court finds the medical explanation by Dr. Barns for her delivery on November 17 rather than November 25 to be most convincing and corroborates the truthfulness of petitioner’s testimony regarding acts of sexual intercourse only with the respondent about March 4, 1972. It is noteworthy that the respondent admits the acts of sexual intercourse with the petitioner about this time. The court finds that neither the petitioner nor the respondent used any *637 effective device of any kind or used any effective precaution of any kind to prevent or avoid pregnancy.
Based upon the afore-mentioned findings this court finds that the petitioner has met her burden of proof by clear, convincing and entirely satisfactory evidence to establish the respondent as being the father of her child. On this record the court has no doubts that there should be a finding that the respondent is the father of this child and so finds.
A new order of filiation and support in accordance with this record should be entered which shall include the same directive against the respondent regarding his financial obligations as was provided by the order of filiation and support of this court dated April 12, 1973 that was filed and entered April 16, 1973. The respondent should be given credit for the sums that he has paid into court in accordance with the previous order of April 12, 1973 and is responsible for the arrearage that has accumulated.